UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TYRONE WASHINGTON,

    Plaintiff,

v.

WASHINGTON STATE DEPARTMENT
OF CORRECTIONS *et al*.,

    Defendants.

Case No.  C05-5630RBL

REPORT AND RECOMMENDATION

**NOTED FOR**
**December 22nd, 2006**

This 42 U.S.C. § 1983 Civil Rights action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR 3, and MJR 4.  Before the court is defendant's motion for summary judgment (Dkt. # 36).  Plaintiff has responded (Dkt. # 38).  Defendants have replied (Dkt. # 39).  This matter is ripe for review.

INTRODUCTION AND SUMMARY CONCLUSION

Having reviewed the summary judgment pleadings, and the remainder of the file, the court recommends that all defendants except David Patton be dismissed from this action and all claims other than the plaintiff's Fourth Amendment claim regarding the manner in which he was strip searched be dismissed.  The sole remaining claim against David Patton should be set for trial.

FACTS

The defendants in this action are the Washington State Department of Corrections, the

REPORT AND RECOMMENDATION
Page - 1

Mc Neil Island Corrections Center, and two Correctional Officers, James Dye and David Patton (Dkt. # 4). The following facts are taken from defendant's motion for summary judgment (Dkt. # 36). Tyrone Washington is an inmate. On May 11th, 2005 inmate Washington was stopped as he was leaving his job in the prison dining hall at Mc Neil Island Corrections Center. The alleged reason for the stop was Correctional Officer James Dye observing inmate Washington to have a large bulge in the front of his pants. Officer Dye contacted Correctional Officer David Patton. Officer Patton contacted a shift lieutenant and received permission to strip search inmate Washington. Inmate Washington had contraband in his pants. The contraband was pieces of chicken from the evening meal.

Officers Dye and Patton escorted inmate Washington to a secure area, the scullery area of diningroom A, and ordered him to perform a strip search. The parties agree the strip search procedure was repeated four times. The defendants allege the first three times the search procedure was performed Inmate Washington squatted when he spread his buttocks. The defendants allege inmate Washington was preventing officer Patton from observing his anus by squatting. The defendants allege part of the strip search procedure is to allow observation of the anus to insure contraband has not been hidden.

Plaintiff's facts differ slightly (Dkt. # 38). He admits that on May 11th, 2005 he was hiding chicken in the waist band of his pants. Plaintiff also admits the chicken was contraband. Plaintiff contends once the chicken had been taken from him there was no longer any reason to perform a strip search. He alleges the search violated Department of Corrections policy, because it was not logged in the search logbook (Dkt. # 38, page 1). Plaintiff contends this is proof permission to perform the search was not obtained from a shift lieutenant. He alleges the search was performed for the "personal gratification" of the officers (Dkt. # 38, page2).

Plaintiff contradicts defendant's assertion that he did not properly perform the strip search procedure. He specifically states in his response:

> The fact that I have committed a minor rule violation is not grounds for the officers to strip search me and to have me go through the sequence of the search (4) four times, especially when I've done the sequence in accordance to policy 420.310, the very first time, and to use a dirogatory [sic] fraize [sic] and tell me to use my hands and spread my ass checks, which is totally out of professional conduct, and is considered sexual harassment according to DOC's Rule violation #659.

(Dkt. # 38, page 3).

Defendants have replied to some of plaintiff's arguments (Dkt. # 39). Defendants show that the policy

REPORT AND RECOMMENDATION
Page - 2

1  in effect May 11th, 2005 did not require strip searches be logged into a logbook (Dkt. # 39, page 4). Thus,
2  plaintiff's claim that the search itself violated Department of Corrections policy is without any evidentiary
3  basis.

## STANDARD OF REVIEW

5  Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings,
6  depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that
7  there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of
8  law." Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the
9  nonmoving party fails to make a sufficient showing on an essential element of a claim on which the
10 nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

11 There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a
12 rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
13 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not
14 simply "some metaphysical doubt."). See also Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a
15 material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge
16 or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253
17 (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir.
18 1987).

19 The determination of the existence of a material fact is often a close question. The court must
20 consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the
21 preponderance of the evidence in most civil cases. Anderson, 477 U.S. at 254; T.W. Elec. Service Inc.,
22 809 F.2d at 630. The court must resolve any factual dispute or controversy in favor of the nonmoving
23 party only when the facts specifically attested by the party contradicts facts specifically attested by the
24 moving party. Id.

25 The nonmoving party may not merely state that it will discredit the moving party's evidence at trial,
26 in hopes that evidence can be developed at trial to support the claim. T.W. Elec. Service Inc., 809 F.2d at
27 630.(relying on Anderson, supra). Conclusory, nonspecific statements in affidavits are not sufficient, and
28 "missing facts" will not be "presumed." Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89

REPORT AND RECOMMENDATION
Page - 3

1  (1990). It is with this standard firmly in mind that the court considers this motion and plaintiff's opposition
2  to the motion.

3  DISCUSSION

4      A.    <u>Mc Neil Island and the Washington State Department of Corrections</u>.

5      Defendants argue Mc Neil Island Corrections Center and the Washington State Department of
6  Corrections are entitled to summary judgement because neither of these entities are persons within the
7  meaning of the Civil Rights Act. Further, defendants argue an award of damages against either of these
8  entities would violate the Eleventh Amendment (Dkt. # 36, pages 9 and 10).

9      Neither states nor state officials acting in their official capacities are persons for purposes of 42
10 U.S.C. § 1983. <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 48, 71 (1989). This rule applies equally
11 to state agencies. See <u>Kaimowitz v. Board of Trustees of the Univ. of Ill.</u>, 951 F.2d 765, 767 (7th Cir.
12 1991); <u>Johnson v. Rodriguez</u>, 943 F.2d 104, 108 (1st Cir. 1991). Because they are not persons within the
13 meaning of § 1983, plaintiff has not stated a cause of action against these state entities.

14     Plaintiff's claims against the state entities are also barred by the Eleventh Amendment. The
15 Eleventh Amendment bars a person from suing a state in federal court without the state's consent. <u>See
16 Seminole Tribe of Florida v. Florida</u> 517 U.S. 44, 72 (1996); <u>Natural Resources Defense Council v.
17 California Dep't of Transportation</u>, 96 F.3d 420, 421 (9th Cir. 1996). Eleventh Amendment immunity
18 extends to state agencies. <u>Pennhurst State Sch. & Hosp. v. Holdeman</u>, 465 U.S. 89, 101-102(1984).
19 Eleventh Amendment immunity is not automatically waived in actions brought under 42 U.S.C. § 1983.
20 <u>Quern v. Jordan</u>, 440 U.S. 332 (1979). Washington has not waived the protection of the Eleventh
21 Amendment. <u>Edgar v. State</u>, 92 Wn.2d 217 (1979).

22     Neither the Washington State Department of Corrections or the Mc Neil Island Correctional
23 Facility are proper parties to this action. The defendants motion for summary judgment should be
24 **GRANTED AS TO THESE TWO DEFENDANTS.**

25     B.    <u>Eighth Amendment claims</u>.

26     Defendants analyze the fact pattern in this action as possibly stating a claim under the Eight
27 Amendment (Dkt. # 36 and 39). Plaintiff does not specify what constitutional rights he alleges were violated
28 by the strip search conducted on May 11th, 2005 (Dkt. # 4).

REPORT AND RECOMMENDATION
Page - 4

1   The Eighth Amendment prohibits infliction of cruel and unusual punishment. The Eighth
2   Amendment is violated when an inmate is deprived of the minimal civilized measure of life's necessities.
3   <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981). To establish an Eighth Amendment violation, an inmate
4   must allege both an objective element, that the deprivation was sufficiently serious, and a subjective
5   element, that a prison official acted with deliberate indifference. <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994).
6   To prove an alleged Eighth Amendment violation an inmate must establish that there was some degree of
7   actual or potential injury, and that society considers the conduct at issue to be so grave that it violates
8   contemporary standards of decency to expose anyone unwillingly to those acts. <u>Helling v. McKinney</u>, 509
9   U.S. 25 (1993).

10   Plaintiff has not established the objective component for an Eighth Amendment violation. The
11   Ninth Circuit addressed a plaintiff's claim that officials subjected him to visual body cavity searches on a
12   regular basis, and pointed and made jokes among themselves during the searches. <u>Somers v. Thurman</u>,
13   109 F.3d 614, 622-623 (9th Cir. 1997). The court concluded the conduct was not objectively harmful
14   enough to establish an Eighth Amendment violation. The court set forth the facts in cases where an Eighth
15   Amendment violation was found and showed them to be far more severe. <u>Somers v. Thurman</u>, 109 F.3d
16   614, 622-623 (9th Cir. 1997). Defendant's motion for summary judgment should be **GRANTED AS TO**
17   **THE EIGHTH AMENDMENT CLAIMS.**

18   C.   <u>Fourth Amendment claims</u>.

19   The Fourth Amendment guarantees people the right to be free from unreasonable search and
20   seizure. Inmates do not lose those protections upon incarceration, but the reasonableness of a particular
21   search is determined by reference to the prison context. <u>Michenfelder v. Sumner</u>, 860 F.2d 328, 332 (9th
22   Cir. 1988). The state may restrict or withdraw rights to the extent necessary to further the correctional
23   system's legitimate goals and policies, chief among which is internal security. <u>Grummett v. Rushen</u>, 779
24   F.2d 491, 492 (9th Cir. 1985). Prison regulations that limit an inmate's constitutional rights are valid if
25   they are reasonably related to legitimate penological interests. <u>Turner v. Safley</u>, 482 U.S. 78, 89, 107 S.Ct.
26   2254 (1987).

27   The test of reasonableness of a search requires a balancing of the need for the particular search
28   against the invasion of the prisoner's rights. <u>Thompson v. Souza</u>, 111 F.3d 694 (9th Cir. 1997). To

REPORT AND RECOMMENDATION
Page - 5

determine whether a particular search was reasonable, courts must consider the scope of the particular intrusion, the manner in which the search is conducted, the justification for initiating the search, and the place in which it is conducted. Thompson v Souza, 111 F.3d at 700, citing Bell v. Wolfish, 441 U.S. 520, 559 (1979).

  1. Justification for a strip search.

The parties agree that on May 11th, 2005 Mr. Washington was observed to have a bulge in his pants as he left the dining hall. Mr. Washington claims there was no justification for a strip search once the chicken he was hiding in his pants had been recovered. The court does not agree. The finding of contraband on an inmate may well necessitate further search to insure the inmate is not hiding additional contraband. This issue touches directly on the security of the facility and prison officials are entitled to deference. Turner v. Safley, 482 U.S. 78 (1987).

  2. Scope of the search.

The search at issue was a strip search. Given the undisputed fact that Mr. Washington had contraband hidden under his clothes the scope of the search was reasonable. In the prison environment, the legitimate expectation of bodily privacy, even from officers of the opposite sex is extremely limited. Bell v. Wolfish, 441 U.S. at 537; Jordan v. Gardner, 986 F.2d 1521, 1524 (9th Cir. 1993). Here, plaintiff had chosen to violate prison rules and was hiding contraband under his clothes. Removal of all clothing, to insure he had no other contraband hidden on his person, furthers legitimate penological goals. Turner v. Safley, 482 U.S. 78, 89(1987).

  3. Manner in which the search was conducted.

The parties agree the strip search procedure was repeated four times in this case. Today, the court is not concerned with the steps or normal procedures used by the Department of Corrections in conducting a strip search. However, each individual search must be conducted in a reasonable manner. Defendant Patton states that the first three times he ran inmate Washington through the strip search procedure inmate Washington squatted when he spread his buttocks (Dkt. # 36 Exhibit 3). Officer Patton testifies he could not observe inmate Washington's anus because of inmate Washington squatting. id. Officer Patton testifies he put inmate Washington through the procedure again and again until inmate Washington complied with the procedure. Officer Patton's testimony mirrors Officer Dyes observations (Dkt. # 36,

1  Exhibit 1).

2      Mr. Washington has a different version of what happened and claims he fully complied with the
3  search procedure the first time he was put through it (Dkt. # 38, page 3).  There exists a dispute of
4  material fact concerning the manner in which the search was conducted and the need for repeating the
5  procedure four times.

6      This does not mean both officer Dye and Officer Patton are proper defendants in this action.  There
7  is no evidence to show Correctional Officer Dye ordered inmate Washington to repeat the search
8  procedure.  Nor is there evidence to show Officer Dye played any part in Officer Patton"s decision to
9  repeat the search procedure.  Thus, the issue of material fact in this case does not preclude dismissing
10 officer Dye from this action.  The defendants motion for summary judgement on the Fourth Amendment
11 Claim should be **GRANTED AS TO OFFICER DYE AND DENIED AS TO OFFICER PATTON.**

12     D.    <u>Qualified Immunity</u>.

13     State officials are entitled to qualified immunity unless they violated clearly established law of
14 which a reasonable person should have known.  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 102 S.Ct. 2727, 2732
15 (1982).  In the Ninth Circuit, a decision regarding qualified immunity requires three inquires:  (1) the court
16 must identify the specific right allegedly violated; (2) the court must determine whether that right was so
17 clearly established as to alert a reasonable officer as to its constitutional parameters; and (3) the court must
18 make the ultimate determination of  whether a reasonable officer could have believed lawful the particular
19 conduct at issue.  <u>Sloman v. Tadlock</u>, 21 F.3d 1462, 1467 (9th Cir. 1994).

20     The specific right allegedly violated is plaintiff's Fourth Amendment right to be free from an
21 unreasonable search.  It is well established that a strip search of an inmate is constitutional if it is
22 reasonably related to prison security.  <u>Rickman v. Avanti</u>, 854 F.2d 327 (9th cir. 1988). It is equally well
23 established that the scope and manner of a search must be reasonable.  <u>Thompson v Souza</u>, 111 F.3d 694
24 (9th Cir. 1997). (Discussing strip search of inmates and qualified immunity). In <u>Thompason</u> the court found
25 the defendants entitled to qualified immunity, but the manner and scope of the search was undisputed.
26 <u>Thompson v Souza</u>, 111 F.3d at 700.  Today, there is a dispute of fact regarding the manner in which the
27 search was conducted. That dispute is central to the reason plaintiff was put through the search procedure
28 four times.

The issue of qualified immunity and strip searches was again examined by the Ninth Circuit in September of 2006.  <u>Hydrick v Hunter</u>, 466 F.3d 676 (9th Cir. 2006).

In <u>Hydrick</u> the court was considering qualified immunity at the F. R. Civ. P. 12 (b)(6) stage.  The court stated:

> Of course, "the reasonableness of a particular search [or seizure] is determined by reference to the[detention] context." *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir.1988). As with any detained person, there are concerns that mirror those that arise in the prison context: i.e., "the safety and security of guards and others in the facility, order within the facility and the efficiency of the facility's operations." *Andrews v. Neer*, 253 F.3d 1052, 1061 (8th Cir.2001). But even so, qualified immunity does not protect a search or seizure that is arbitrary, retaliatory, or clearly exceeds the legitimate purpose of detention.
>
> Under this framework, we cannot dismiss Plaintiffs' claim at this stage. The "reasonableness" of a search or seizure is a fact-intensive inquiry that cannot be determined at this stage. *See, e.g., Thompson*, 111 F.3d 694 (9th Cir.1997) (evaluating the reasonableness of a strip search based on the manner and scope of the search, the place, and the justification). It is impossible to make such a fact-specific determination when the precise circumstances of the searches or seizures are not before the court and when the Defendants have not yet had a chance to explain their justification for the alleged searches or seizures. We cannot say, then, that Plaintiffs cannot possibly state a "clearly established violation" based on any facts consistent with their pleadings. Therefore, Defendants do not have a right to qualified immunity under Federal Rule of Civil Procedure 12 (b)(6).

<u>Hydrick v Hunter</u>, 466 F.3d 676, 694 (9th Cir. 2006).

At trial, defendants may prove the manner of the search was reasonable.  However, material issues of fact regarding the reason plaintiff was ordered to complete the procedure four times exists.  Defendants motion for summary judgement should be **DENIED AS TO QUALIFIED IMMUNITY.**

E.   <u>Retaliation</u>.

Defendants address the issue of retaliation in the motion for summary judgment (Dkt. # 36, pages 7 and 8).  Plaintiff uses the word "retaliation" in his request for relief (Dkt. # 4).  There are no facts in the complaint showing the search on May 11th, 2005 was in retaliation for any prior event (Dkt. # 4).  Retaliation is not properly an issue in this case.  Defendants motion for summary judgment should be **GRANTED AS TO RETALIATION.**

## CONCLUSION

There exists a dispute of material fact regarding the manner in which inmate Washington was strip searched on May 11th, 2005.  That dispute precludes summary judgment as to defendant Patton.  The motion for summary judgment should be **GRANTED IN PART AND DENIED IN PART.**  A proposed order accompanies this Report and Recommendation.

1  Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the
2  parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ.
3  P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v.
4  Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to
5  set the matter for consideration on **December 22nd, 2006**, as noted in the caption.

8  DATED this 24th day of November, 2006.

11  */S/ J. Kelley Arnold*
    J. Kelley Arnold
12  United States Magistrate Judge